**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Bryce Burton, Gioacchino DiBenedetto, Larry Easterly, Steve Faulkner, Eric Fisher, Edward Halvorson, John Hether, Lloyd Kay, Thomas Kelly, Jr., Thomas Koester, Louis Luckett, Humberto Ochoa, Lana Selby, Lange Thomas, Edward Vivian, and Joseph Wardlow, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs )<br>v. )<br><br>Chrysler Group LLC, )<br><br>Defendant. ) | Civil Action No. 8:10-00209-JMC<br><br><br><br><br><br>**OPINION AND ORDER** |

This putative class action arises out of claims of alleged defects in Dodge Ram 2500 and 3500 pickup trucks, model years 2007 through 2009, equipped with the 6.7 liter Cummins turbo diesel engine (hereafter identified as the "Dodge Ram Truck(s)").  Plaintiffs, Bryce Burton, Gioacchino DiBenedetto, Larry Easterly, Steve Faulkner, Eric Fisher, Edward Halvorson, John Hether, Lloyd Kay, Thomas Kelly, Jr., Thomas Koester, Louis Luckett, Humberto Ochoa, Lana Selby, Lange Thomas, Edward Vivian, and Joseph Wardlow, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), filed this action against Defendant Chrysler Group LLC ("Defendant"), alleging claims for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and violation of various state consumer protection statutes.  (ECF No. 52.)

This matter is before the court on Defendant's motion to dismiss Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 53.) Plaintiffs assert that the motion should be denied because they have adequately pled all four claims and Defendant misinterprets the applicable pleading standards and substantive law.  (See

1

ECF No. 58.)  For the reasons set forth below, the court **DENIES** Defendant's motion to dismiss.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as pled in Plaintiffs' second amended complaint are presumed true for purposes of the instant motion.  Plaintiffs each individually purchased a Dodge Ram Truck.  (ECF No. 52, ¶¶ 9-23.)    Plaintiffs allege that Defendant "designed, manufactured, tested, warranted, advertised, distributed, and sold" Dodge Ram Trucks across America through its dealers.  (ECF No. 52, ¶ 37.)  Plaintiffs further allege that each Dodge Ram Truck contains an exhaust system that "is inherently and permanently defective because it fails to effectively rid itself of diesel particulates, causing soot to accumulate in the DPF, turbocharger, EGR valve, oxygen sensors, and other associated parts."  (ECF No. 52, ¶ 44.)   "The accumulation of soot in the DPF, turbocharger, EGR valve, oxygen sensors, and other associated parts triggers the check engine light and requires those parts to be regularly repaired, replaced, or cleaned."  (ECF No. 52, ¶ 45.) The exhaust system defect has manifested itself and caused problems in Dodge Ram Trucks including "the inability to start, engine stalling, loss of power, the turbo charger not engaging or otherwise malfunctioning, the transmission not downshifting, plugged exhaust system, poor fuel economy, and triggering of the check engine light."  (ECF No. 52, ¶ 47.)

Due to the defect in the exhaust system of the Dodge Ram Truck, Plaintiffs have had to take their Dodge Ram Trucks in "for repairs, replacements, and adjustments on numerous occasions after the defect caused soot to accumulate in the DPF, turbocharger, EGR valve, oxygen sensors, and/or associated parts and triggered the check engine light."  (ECF No. 52, ¶ 50.)  Each time they took their vehicles to one of Defendant's dealerships, Plaintiffs informed Defendant's dealerships' employees about the problems caused by the exhaust system defect in their Dodge Ram Trucks.  (ECF No. 52, ¶ 51.)  Despite Defendant's repeated attempts to repair,

2

replace, and adjust items within or associated with the exhaust system of Plaintiffs' Dodge Ram Trucks, those trucks remain defective.  (ECF No. 52, ¶ 52.)

Upon purchasing the Dodge Ram Truck, each Plaintiff received a written manufacturer's warranty from Defendant that expressly warranted that Defendant would "repair, replace, or adjust all items defective in material, workmanship, or factory preparation" on the Dodge Ram Truck, including the repair or replacement of defective emission-related parts.  (ECF No. 52, ¶ 49.)  Plaintiffs allege that Defendant breached the warranty because it is unable to successfully repair or otherwise remedy the inherent and permanent defect in the exhaust systems of the Dodge Ram Truck and because Plaintiffs have been deprived of the value of the bargain.  (ECF No. 52, ¶ 53.)  Plaintiffs further allege that the defect will require them to "expend significant sums of money after their warranties expire to repair, replace, and/or adjust the DPF, turbocharger, EGR valve, oxygen sensors, and other associated parts" on their Dodge Ram Trucks and has significantly diminished their fair market value.  (ECF No. 52, ¶¶ 56, 57.)

On January 27, 2010, Plaintiffs filed their complaint asserting class claims in this court.  (ECF No. 1.)  On March 12, 2010, Defendant filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and a motion to transfer venue of the matter to the United States District Court for the Southern District of New York.  (ECF Nos. 20 & 21.)  Plaintiffs filed opposition to Defendant's motions to dismiss and transfer venue on April 5, 2010.  (ECF Nos. 28 & 29.)  In the response in opposition to the motion to dismiss, Plaintiffs asked for leave to amend the complaint to avoid dismissal of the action.  (ECF No. 28, p. 28.)  On March 28, 2011, the court granted Plaintiffs' request for leave to amend the complaint and dismissed without prejudice Defendant's motions to dismiss or transfer venue.  (ECF No. 46.)  Plaintiffs subsequently filed an amended complaint on April 27, 2011.  (ECF No. 47.)

Thereafter, on May 12, 2011, the court granted a stipulated motion by the parties to allow Plaintiffs to file a second amended complaint.  (ECF No. 51.)  Plaintiffs filed their second amended complaint on May 27, 2011.  (ECF No. 52.)  Defendant moved on June 7, 2011, for dismissal of the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 53.)  Plaintiffs filed opposition to Defendant's motion to dismiss the second amended complaint on June 24, 2011, to which Defendant filed a reply in support of dismissal on July 5, 2011.  (ECF Nos. 58 & 61.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    Standard for Fed. R. Civ. P. 12(b)(6) Motion

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ––– U.S. –––, –––, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court must treat factual allegations of the nonmoving party as true.  Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

### B.    Breach of Express Warranty

Plaintiffs' first cause of action is for breach of express warranty.  In South Carolina, a seller may create an express warranty in a number of ways, including "[a]ny affirmation of fact

4

or promise, . . . made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain." S.C. Code Ann. § 36–2–313(1). In addition, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id. In order to establish a cause of action for breach of an express warranty, a plaintiff must show "the existence of the warranty, its breach by the failure of the goods to conform to the warranted description, and damages proximately caused by the breach." First State Sav. & Loan v. Phelps, 385 S.E.2d 821, 825 (S.C. 1989).

Defendant moves to dismiss Plaintiffs' claim for breach of express warranty contending that Plaintiffs did not plead any facts supporting their contention that the express written warranty failed its essential purpose. (ECF No. 53-1, p. 14.) Defendant next contends that no evidence exists showing a refusal by Defendant to repair Plaintiffs' Dodge Ram Trucks, or that there were repeated failed repair attempts on each of Plaintiffs' Dodge Ram Trucks over a short period of time. (Id. at p. 15.) Finally, Defendant contends that Plaintiffs' damages allegations are legally insufficient because they are speculative in nature and/or lack evidentiary support. (Id. at pp. 10-11.) Therefore, Defendant argues that Plaintiffs cannot state a claim for breach of an express warranty and the cause of action should be dismissed.

Plaintiffs allege that Defendant's manufacturer's warranty for the Dodge Ram Trucks expressly warranted that Defendant would repair, replace, or adjust items defective in material, workmanship, or factory preparation, and, more specifically, that Defendant would repair or replace defective emission-related parts. (See ECF No. 52, ¶ 78.) Plaintiffs further allege that Defendant breached this express warranty because, despite repeated attempts, Defendant is unable to successfully repair or otherwise remedy the exhaust system defect in Plaintiffs' Dodge

5

Ram Trucks, depriving Plaintiffs of the value of their bargain and causing the limited remedy or repair, replacement, or adjustment to fail of its essential purpose. (See ECF No. 52, ¶¶ 52, 79-81.)  Finally, Plaintiffs allege that the defect will require them to "expend significant sums of money after their warranties expire to repair, replace, and/or adjust the DPF, turbocharger, EGR valve, oxygen sensors, and other associated parts" on their Dodge Ram Trucks and has significantly diminished their fair market value.  (ECF No. 52, ¶¶ 56, 57.)

Because the allegations of the complaint are deemed true in the context of a motion to dismiss, Plaintiffs have alleged the existence of a warranty, its breach by the failure of the goods to conform to the warranted description, and damages proximately caused by the breach. Therefore, the court finds that Plaintiffs' second amended complaint does sufficiently to state a claim for breach of an express warranty.  Therefore, Defendant's motion to dismiss Plaintiffs' claim for breach of express warranty is denied.

**C.     Breach of Implied Warranty of Merchantability**

Defendant moves to dismiss Plaintiffs' claim that Defendant breached the implied warranty of merchantability by selling unmerchantable Dodge Ram Trucks to Plaintiffs.  (See ECF No. 52, ¶¶ 92-93.)  "Unless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." S.C. Code Ann. § 36–2–314(1).  South Carolina law sets forth several requirements that must be met for goods to be merchantable.  See S.C. Code Ann. § 36–2–314(2).  For purposes of Plaintiffs' claim, the only requirement relevant is that the goods, to be merchantable, "are fit for the ordinary purposes for which such goods are used."  Id.

Defendant contends that Plaintiffs' merchantability claim fails because they do not allege that (1) they have stopped driving their trucks because of the alleged defect; (2) the Dodge Ram

6

Trucks are not currently operational; or (3) they have stopped using their trucks for transportation.  (ECF No. 53-1, p. 16.)  As such, Defendant asserts that even viewing the allegations of the second amended complaint favorably to Plaintiffs, those allegations only establish that "Plaintiffs have experienced sporadic mechanical issues with the exhaust systems in their trucks during the warranty period . . . [and] [s]uch allegations do not establish that the trucks were, or are, unfit to provide transportation."  (Id.)

In response to Defendant's assertions, Plaintiffs contend that in the vehicle context, the implied warranty of merchantability is "a guarantee that [vehicles] will operate in a 'safe condition' and 'substantially free of defects.'" (ECF No. 58, p. 22 (citing Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989)).)  "Thus, 'where a car can provide safe, reliable transportation[,] it is generally considered merchantable.'" (Id.)  Relying on Carlson, Plaintiffs assert that their claim for unmerchantability has been sufficiently pled based on the allegations that the Dodge Ram Trucks were unable to provide safe, reliable transportation because they stalled, lost power, and regularly had to be taken in for repairs, replacements, and adjustment of parts due to the exhaust system defect.  (See ECF No. 52, ¶¶ 47, 50.)

After accepting the well-pleaded allegations in Plaintiffs' second amended complaint as true and drawing all reasonable factual inferences from those facts in Plaintiffs' favor, the court cannot conclude with certainty that Plaintiffs are unable to prove any set of facts in support of this claim entitling them to relief.  Accordingly, Defendant's motion to dismiss Plaintiffs' claim for breach of implied warranty of merchantability is denied.

**D.**     **Breach of Implied Warranty of Fitness for a Particular Purpose**

Plaintiffs' third cause of action is for breach of the implied warranty of fitness for a particular purpose.  In South Carolina, an implied warranty of fitness for a particular purpose

7

arises if "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ."  S.C. Code Ann. § 36–2–315.  If "the particular purpose for which a product is purchased is also the ordinary or intended purpose of the product, the warranties of merchantability and of fitness for a particular purpose merge and are cumulative, such that a plaintiff may proceed upon either theory."  Soaper v. Hope Indus., 424 S.E.2d 493, 495 (S.C. 1992) (holding that plaintiff, who purchased film processing machine, "impliedly made known to [defendant] that his particular purpose for the machine was fast film processing" and that "[w]hen the machine failed in that purpose, it was both unmerchantable and unfit for its particular purpose").

Defendant contends that Plaintiffs' fitness for particular purpose claim should be dismissed because there are no allegations suggesting that any plaintiff purchased a Dodge Ram Truck "for any purpose other than transportation and/or hauling – the general use for which all trucks are intended."  (ECF No. 53-1, p. 17.)  Defendant further contends this claim should be dismissed because Plaintiffs did not allege that they put Defendant on notice that they were purchasing Dodge Ram Trucks for any particular purpose, and Plaintiffs have not set forth any facts suggesting that they relied on Defendant's skill and judgment to select their Dodge Ram Trucks for them.  (Id. at pp. 17-18.)

Plaintiffs contend they adequately pled both notice and an agency relationship between Defendant and the dealerships selling Dodge Ram Trucks.  First, Plaintiffs allege that they informed Defendant, through the employees of its dealerships, about the problems caused by the defective exhaust system each time the vehicles were taken to one of Defendant's dealerships and, by doing so, Plaintiffs communicated to Defendant that their purchases of Dodge Ram

8

Trucks were "still troublesome." (ECF No. 52, ¶ 51.) Plaintiffs further allege that "[a]t all relevant times, Defendant's dealerships were it agents for motor vehicle repairs and warranty issues because they performed repairs, replacements, and adjustments covered by Defendant's manufacturer's warranty." (ECF No. 52, ¶ 30.)

Based on the foregoing, the court finds that, at this stage of the litigation, Plaintiffs have sufficiently pled their claim for breach of implied warranty of fitness for a particular purpose. Therefore, Defendant's motion to dismiss as to this claim is denied.

**E.    Violation of Consumer Protection Statutes**

In this claim, Plaintiffs allege violation of state unfair and deceptive acts statutes, which statutes constitute a source of protection for consumers from predatory, deceptive, and unscrupulous business practices. Specifically, individual Plaintiffs Larry Easterly ("Easterly") and Eric Fisher ("Fisher") allege that Defendant violated the consumer protection statutes of various states[1] by committing the following acts:

- Advertising, marketing, distributing, and selling Dodge Ram Trucks, as well as servicing those trucks after sale, which acts constitute conduct and activities in the course of trade and commerce (ECF No. 52, ¶ 110.);

- Engaging in unfair, unconscionable, deceptive, and fraudulent trade practices and acts by advertising, marketing, distributing, and selling Dodge Ram Trucks to Easterly and Fisher, et al., without informing them of the common defect in the exhaust systems of those trucks (ECF No. 52, ¶ 111.);
- Concealing the defect in the exhaust system of Dodge Ram Trucks from Easterly and Fisher, et al., and failing to warn about the defect (ECF No. 52, ¶ 117.); and

- Proximately causing damage and injury to Easterly and Fisher, et al., including the diminution in fair market value of their respective Dodge Ram Trucks, repair costs, the loss of revenue or profits (ECF No. 52, ¶¶ 131-133.).

Easterly and Fisher further seek to serve as class representatives for individuals in each of the

---

[1]  The states are identified in the second amended complaint as Arkansas, Colorado, California, Connecticut, Kansas, Missouri, New Jersey, New Mexico, New York, Ohio, Vermont, and Washington. (See ECF No. 52, ¶¶ 119-130.)

twelve states so identified.

Defendant asserts dismissal of this claim is appropriate because Easterly and Fisher do not have standing to invoke the consumer protection statutes of any state other than Missouri. (ECF No. 53-1, p. 18.)   Defendant contends that Easterly and Fisher are both residents of Missouri, both purchased their vehicles in that state, and have not alleged that they were victims of any wrongs committed in any state other than Missouri.  (ECF No. 53-1, p. 18 (citing ECF No. 52, ¶¶ 11, 13).)  As a result, Defendant argues that the consumer protection claim should be dismissed to the extent it is brought on behalf of the residents of, and under the laws of, any state other than Missouri.  (Id.)

Plaintiffs agree that Easterly and Fisher only assert personally consumer protection claims under Missouri state law.  (ECF No. 58, p. 25.)  However, Plaintiffs disagree that Easterly and Fisher are precluded from serving as representatives for a subclass of purchasers from other states.  (Id.)  Plaintiffs contend that a "nuanced approach" to analyzing standing challenges is appropriate under the circumstances, which approach allows the court to determine first if class certification creates the standing question.  (Id. (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) ("But the class certification issues are, . . . 'logically antecedent' to Article III concerns, . . . and themselves pertain to statutory standing, which may properly be treated before Article III standing, . . . [t]hus the issue about Rule 23 certification should be treated first, 'mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints . . . ."))  Relying on Ortiz, Plaintiffs ask the court to defer ruling on the question of whether individual Plaintiffs Easterly and Fisher have standing to represent class members whose claims are governed by laws of states other than Missouri until after the class certification issue has been addressed.  (ECF No. 58, pp. 26-27.)  In reply, Defendant acknowledges the split

10

of authority in district courts as to whether, under certain specified circumstances, a court can defer standing issues until class certification.  (ECF No. 61, p. 14.)

Upon consideration of the parties' arguments, the court agrees with Plaintiffs that Defendant's challenge would not arise but for the proposed class certification.  Defendant does not challenge Easterly and Fisher's standing to assert personal claims under the state laws of Missouri, where their Dodge Ram Trucks were purchased.  (See ECF No. 53-1, p. 18.)  Rather, Defendant challenges only Easterly and Fisher's standing to "invoke the consumer protection statutes of any state other than Missouri."  (ECF No. 61, p. 13.)  Accordingly, the court will apply Ortiz, defer consideration of Defendant's standing challenge, and deny the motion to dismiss as to Plaintiffs' claim for violation of state consumer protection statutes.

### III.    CONCLUSION

For the foregoing reasons, Defendant Chrysler Group LLC's motion to dismiss Plaintiffs' second amended complaint is hereby **DENIED**, without prejudice as to the issues relevant to the court's determination of whether Plaintiffs Easterly and Fisher have standing in the context of class certification to invoke the consumer protection statutes against Defendant in states other than Missouri.  (ECF No. 53.)

**IT IS SO ORDERED**.

J. Michelle Childs

J. MICHELLE CHILDS
UNITED STATES DISTRICT JUDGE

March 12, 2012
Greenville, South Carolina

11